COLUMBIA WATER POWER CO. v. COLUMBIA LAND &c. CO.

1. RECOVERY OF LAND—SECOND ACTION—COSTS.—Under the statute limiting the right to bring action for the recovery of land to two actions, provided that the costs of the first action be first paid, and the second action be brought within two years from the granting of a discontinuance in the first action, a second action, after order of discontinuance of a first action, cannot be brought unless the costs of the first action be first paid, and if not so paid, the second action must fail.

2. IBID.—DISCONTINUANCE.—If a judgment can be entered in any case on an order of discontinuance granted on plaintiff's motion, such a judgment is

not necessary to a termination of the first action for recovery of land under this statute.

3. IBID.—RULE OF COURT.—The old statutes on this subject reviewed and the present law declared to be as above stated, and to override an existing rule of court, which was adopted before this statute was enacted, and because a rule of court cannot violate a statutory requirement.

4. IBID.—SECOND ACTION—WAIVER.—This statutory provision was not intended only as a benefit to defendant, but to fix a condition to the privilege accorded to plaintiff. Nor did defendant waive his rights by failing to have the costs of the first action taxed, or by failing to demand payment, or by urging a trial of the second action with knowledge that the costs of the former action were unpaid.

5. DISCONTINUANCE.—The statement in the order of discontinuance, that it was taken for the purpose of bringing another action, did not authorize a second action on terms other than those fixed by the statute.

6. RECOVERY OF LAND—SECOND ACTION—COSTS.—The court could not assume that there were no costs in the former action because none had been taxed, where costs are given by statute, and where plaintiff made payment at the trial of the costs of the first action, as then stated by the clerk of court.

7. LONG POSSESSION OF LAND.—A statutory requirement enforced with less reluctance when its effect was to defeat an action instituted for the recovery of land of which defendant and those under whom he claimed had been in undisputed possession for forty years, and the character of such possession was withdrawn from the jury.

8. PETITION FOR REHEARING refused.

Before HUDSON, J., Richland, October, 1893.

Action by Columbia Water Power Company against Columbia Land and Investment Company.

*Messrs. Lyles & Muller* and *Allen J. Green,* for appellant.

*Messrs. Abney & Thomas* and *Leroy F. Youmans,* contra.

November 9, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This is an action brought by the plaintiff to recover possession of two parcels of land, one on the east and the other on the west side of the Columbia Canal, now in the possession of the defendant company. The plaintiff alleges in the complaint that its title is derived from one B. F. Taylor, who, while seized and possessed of the land

in dispute, conveyed the same in fee simple to the State of South Carolina on the 14th of October, 1824, and that by subsequent conveyance the same became vested in plaintiff. It is also alleged in the complaint that defendant claims, as its source of title, the said B. F. Taylor, "who went into possession of said two tracts of land under the authority and permission contained in section 5 of the act of the General Assembly of the State of South Carolina, entitled 'An act to vest the Columbia Canal in Frederick William Green for the term of twenty-one years,' approved the 19th day of December, 1843," and that on the 8th day of April, 1853, the executors of the last will and testament of said Taylor "conveyed, or attempted to convey, all the right, title, and interest of the said Taylor to one Wm. Glaze to the said two tracts of land," and that said Glaze went into possession of the said land under the permission contained in said act of the General Assembly, and while still recognizing the title of the State to the lands in dispute, on the 5th of January, 1855, conveyed all his right, title, and interest in and to the same to John S. Green and H. P. Green, who went into possession and continued in possession under the permission of the said act, recognizing the paramount title of the State thereto; that on the 27th of September, 1867, by a conveyance of that date from the said H. P. Green, the said John S. Green became possessed of all the interest that the said Taylor held under the permission contained in said act; and that the said John S. Green is the grantor and predecessor of defendant, under whom it claims.

The defendant answered, denying plaintiff's title, and while admitting that said B. F. Taylor is *one* source of its title, denies that such is its *only* source of title; and denies that the said Taylor, or the executors of his will, or Glaze, or the Greens, or either of them, at any time ever entered into possession of the land in dispute under the authority or permission alleged to be contained in the aforesaid act of the General Assembly, or that they ever, in any way, recognized any title in the said State to the premises in dispute, or any person or body corporate whatever, and denies that the several conveyances mentioned in the complaint were in the form alleged. For a *second*

defence, it alleges that the defendant, its predecessors and grantors, have been in continuous occupation and possession of said premises, holding the same under claim of title in fee simple, exclusive of all other right, adversely to the pretended title of the plaintiff for more than twenty years last past before the commencement of this suit. For a *third* defence, it alleges that neither the plaintiff, its predecessors or grantors, were seized or possessed of the land in dispute, or any part thereof, within ten years before the commencement of this action, but that Miss Lucy Green, the defendant's grantor, held the said premises adversely to the pretended title of plaintiff for ten years before the commencement of this action, and that J. S. Green, the predecessor of Miss Lucy Green, held the said premises adversely to defendant's pretended title for another period of ten years before the commencement of this action. For a *fourth* defence, it alleges that defendant is in possession of the premises in dispute under a claim of title thereto by virtue of a written instrument, and that neither the plaintiff nor his predecessors nor grantors were actually in possession of said premises, or any part thereof, within forty years before the commencement of this action, and that the possession of this defendant, connected with the possession of its grantor and grantors, has been continuous for the whole of said period of forty years. For a *fifth* defence, it pleads purchase for valuable consideration without notice. For a *sixth* defence, it alleges that heretofore, to wit: on the 5th day of September, 1892, the plaintiff commenced an action against this defendant for the recovery of the same land now in dispute, and that on the ____ day of July, 1893, the plaintiff took an order from the Court of Common Pleas discontinuing said action, and requiring the plaintiff to pay to the defendant the costs thereof, but that said costs have not been paid.

At the close of plaintiff's testimony, set out in the "Case," defendant moved for a nonsuit, apparently upon the ground that it appears from certain public acts, of which the court is bound to take judicial cognizance, that the State had parted with its title to the land in dispute by its conveyance to Samuel A. Pearce, trustee of Wm. Sprague, before the plaintiff acquired

its title from the State. The motion was overruled without stating any reasons, and defendant excepted. The defendant then offered its testimony, as set out in the "Case." The first witness examined was E. R. Arthur, clerk of the Court of Common Pleas, who produced a record, summons, and complaint, in which the plaintiff herein sought to recover from the defendant herein certain real estate, which was admitted to be the same land sued for in the present action. The clerk testified that he had taxed the costs in the former action informally, and that they had not been paid. The order of discontinuance of the former action, bearing date 11th July, 1893, which was also introduced, reads as follows: "The plaintiff in the above stated action desiring to let fall the same for the purpose of bringing a new action, on motion of its attorneys, it is ordered, that the above stated action be discontinued with costs." The clerk on his cross-examination testified that none of the parties appeared before him when he taxed the costs; that no notice was served on plaintiff for the taxation of costs; and that he had never notified plaintiff of any taxation of costs.

At this stage of the proceedings one of the counsel for plaintiff stated that they stood ready to pay the costs of the former action when properly taxed; to which counsel for defendant replied that the costs should have been paid before the commencement of the present action, which the "Case" shows was commenced on the 15th of August, 1893, and the trial came on at October Term, 1893. "It was made to appear to the court that the defendant, without notice to plaintiff, carried a copy of the summons and complaint into the clerk's office, seven days before the convening of the court, and filed the same and endorsed the following: 'Issue of fact to be tried by the jury. Please docket on Cal. 1. Lyles & Muller, defendant's attorneys, Abney & Thomas, plaintiff's attorneys. Sept. 29th, 1893.' And the same was marked by the clerk as follows: 'Cal. 1, Case 88, filed 29th Sept., 1893,' which said paper was exhibited to the court (and upon which as the record the verdict was written subsequently). It was furthermore made to appear that when the members of the bar met for the purpose of making a roster of cases for trial, Mr. Lyles, attorney for defendant, with-

out any action on the part of the plaintiff, announced that the case would be tried, and had the same placed upon the roster; and that when the roster of cases was called over by the presiding judge, Mr. Lyles stated that they would insist upon a trial; and when the case was finally called peremptorily, he immediately announced that defendant was ready, and would insist upon a trial, to which the plaintiff's counsel, after a consultation, acceded, and the trial commenced. During all this time nothing was said with reference to the payment of the costs of the former action, and it was not until after defendant had entered upon its defence that the question of the non-payment of costs was brought up.

At this stage the court made the following inquiry: "Was judgment upon the order of dismissal regularly entered up and judgment roll formed, and a claim by defendants for costs?" To which counsel for defendant responded as follows: "No, because the statutes do not say anything of the kind." The court then ruled that the case must go on, but the plaintiff must pay the costs. To this counsel for defence said: "We submit it is too late to pay it. The plaintiff has no right now to pay the costs of the former case." To which the court responded as follows: "You should not have suffered the trial to commence." We also find the following statement in the "Case:" "After the court had determined that the case should proceed, and it had been ordered on, and had been proceeded with, then late at night Judge Hudson said to Mr. Abney, plaintiff's attorney, that the costs should be paid, and inquired what was the amount. Whereupon Mr. Abney stated that he could not tell what the amount was; there was no taxation of costs, and what the clerk had added up was $14.70. Thereupon the clerk, standing within his railing, stated that there were costs for the surveyors; whereupon Mr. Abney stated that they had been paid—some $90—and that the other would have been paid if presented or taxed, or any suggestion had been made about it; that he did not know what the costs were, and could not tell until taxed, or until a demand for them in some way was made; but that he was ready at any time, and had always been, to pay the same. Thereupon the court said that plain-

tiff's attorneys should deposit the amount of costs before the opening of the court on the succeeding morning. Mr. Lyles was then asked by Mr. Abney to state the costs demanded. Mr. Lyles stated that he would not receive any costs, and would not tax any. Thereupon next morning, before the opening of the court, the clerk was paid the amount he stated would be a proper estimate of the costs, but no taxation was ever made of the amount. The next morning Mr. Arthur, the clerk of the court, announced that he had received the costs of the former case; whereupon counsel for defendant again gave the court to understand that they still objected;" to which the court replied that their exception would be noted.

At the conclusion of the testimony, both parties submitted sundry requests to charge, which are set out in the "Case," and the Circuit Judge proceeded to charge the jury as is set forth in the "Case." The jury having rendered a verdict in favor of the plaintiff for the land in dispute, and judgment having been entered thereon, defendant appeals upon numerus grounds set out in the record.

We propose to consider first the point raised by the second and twenty-eighth exceptions, as to the effect of the non-payment of the costs of the former action before the commencement of the present action. The fact of the non-payment of the costs of the former action before the commencement of the present action having been proved beyond dispute, in fact having been practically conceded, the question becomes a pure question of law. The act of 1879, now incorporated in the Code as section 98, is the law upon the subject, and it is couched in such plain and unmistakable terms as to leave no doubt upon the question. The second subdivision of that section, corresponding with the first section of the act of 1879, reads as follows: "The plaintiff in all actions for recovery of real property, or the recovery of possession thereof, is hereby limited to two actions for the same, and no more: *Provided,* That the costs of the first action be first paid, and the second action be brought within two years of the rendition of the verdict or judgment in the first action, or from the granting of a nonsuit or discontinuance therein."

So that before a second action can be brought for the recovery of real property, two conditions must be complied with: 1st, the costs of the previous action must "be first paid;" and, second, the second action must be brought within two years from the termination of the first action, either by the "rendition of the verdict or judgment in the first action," or "the granting of a nonsuit or discontinuance therein." If either or both of these conditions be not *first* complied with, then there is no authority for the bringing of a second action, and it must, therefore, necessarily fail. *Ita lex scripta est.* Now, in this case, while the second condition was complied with, inasmuch as the present action was commenced within two years from the granting of the order discontinuing the first action, the second condition was not, inasmuch as it is conceded that the costs of the previous action had not been paid before the commencement of the present action, and hence this action must fail. Counsel for respondent have earnestly urged several grounds upon which they claim that the plaintiff should be excused for its failure to comply with this condition, which we will proceed to consider.

1st. It is urged that there was no judgment entered upon the order of discontinuance, and, therefore, no *legal* termination of the former action. Without laying any stress upon the fact that this view would have the former action still pending, which would be fatal to the present action, we think that the more conclusive answer is, that the statute, which gives this special privilege to the plaintiff of bringing a second upon compliance with certain conditions, does not contemplate or require that a judgment of discontinuance shall be entered. On the contrary, the explicit language of the statute, "from the granting of a nonsuit or discontinuance," shows that a *judgment* entered was not regarded as necessary to the termination of the former action. Indeed, since the Code, it is somewhat difficult to understand how any judgment could be entered upon an order of discontinuance, especially when, as in this case, it is granted on the motion of the plaintiff; for in section 266 of the Code a judgment is defined to be "the final determination of the rights of the parties in the action." Now, however it may

be as to a nonsuit, we do not see how an order of discontinuance can be regarded as a final determination of the rights of the parties to the action. It determines no right whatever, but is simply a permission to plaintiff to drop his action. To show that the Code does not contemplate the entry of a judgment in a case of discontinuance, it is specially provided, in section 324, that whenever a case may be discontinued by the plaintiff, the officers of court, or the clerk for them, may issue *an execution* for the costs, *not* that *a judgment may be entered* upon which an execution may be issued. It seems to us, therefore, that, however it may have been prior to the Code, it is not now necessary that a judgment should be entered upon an order of discontinuance, especially when made on the motion of plaintiff. Hence, the English cases, and our own cases decided before the Code, which have been cited by counsel for respondent to show that the entry of a judgment was necessary, do not apply.

2d. It is contended that the object of the act of 1879 "was simply to restore the common law practice, and reaffirm the old law which had been superseded by the provisions of the Code of 1870." As we understand it, at common law, a plaintiff, by making a new demise to another nominal lessee, might bring as many actions as he pleased for the same land, and, under this law, the practice sprung up of requiring a stay of proceedings in the second action until the costs of the former action are paid. This rule, as well as the practice thereunder, seems to have prevailed in this State, until, by the act of 1712, a plaintiff in ejectment was limited to a single action. But, by the act of 1744, this provision of the act of 1712 was repealed, and a plaintiff in ejectment was permitted to bring a second action, at any time within two years after "verdict and judgment shall pass against the plaintiff" in the first action, or, after "he suffers a nonsuit, or discontinue, or any other ways let fall the same;" and if the second action shall terminate in the defeat of plaintiff, the same shall be final and conclusive against the plaintiff. It will be observed that the act of 1744 makes no provision in reference to the payment of the cost of the former action. But we suppose that, in accordance with long established practice, the court

would, while that act was in force, have granted a stay of proceedings in an action of ejectment upon a proper application for that purpose, just as in an action for any other purpose, though no case has been cited directly to that point. *Miller* v. *Grice*, 2 Rich., 27, was an action on the case; *Daniels* v. *Moses*, 12 S. C., 130, was an action for the foreclosure of a statutory lien on real estate, and *Tibbets* v. *Langley*, 12 S. C., 466, was a proceeding for dower. But all these cases recognize that there was no inflexible rule upon the subject, but that it was a matter resting largely in the discretion of the court.

Thus the law stood until the act of 1744 was repealed by the Revised Statutes of 1872, and the Code, as originally adopted in 1870, made no provision whereby a plaintiff who had failed in his first action for the recovery of real property, which had been substituted for the old action of trespass to try titles, which had been made the substitute of the action of ejectment by the act of 1791 (*Geiger* v. *Kaigler*, 15 S. C., 262), could bring a second action for the recovery of the same land; though we see no reason why, in the interval between the repeal of the act of 1744 and the passage of the act of 1879, a plaintiff who had been nonsuited in an action of trespass to try titles, or for the recovery of real property, or had voluntarily discontinued such action, might not have brought another action, just as he could do if he were nonsuited in an action to recover an ordinary money demand, or had discontinued such action. But, in 1879, the legislature saw fit to pass an act not only limiting the plaintiff to two actions, but also expressly prescribing the conditions upon which alone the second action could be brought. It will thus be seen that, while under the previous law the requirement of the payment of the costs before the second action could be proceeded with, was a matter resting in the discretion of the court, it is now made, *by statute*, a condition precedent to the right to bring the second action, and the court has no right to dispense with or modify such *statutory* requirement. It is very obvious, therefore, that a motion to stay proceedings in this action until the costs of the former action were paid, was not only entirely unnecessary, but would have been wholly out of place. Rule 60 of the Circuit Court, which

32—42

has been invoked, cannot apply to this case for two reasons: 1st. It was adopted in 1878, prior to the passage of the act of 1879. 2d. No rule of court can override a statute.

3d. It is contended that the provision of the act of 1879 (sec. 98 of the Code), requiring the prepayment of the costs of the former action, was intended only for the benefit of the defendant, and that he may, and has in this case, waived his right to insist upon that requirement: (a) By failing to have the costs regularly taxed. (b) By failing to make any claim or demand on the plaintiff for the payment of the costs. (c) By urging and insisting upon the trial of this case, with full knowledge of the fact that the costs of the former action had not been paid. It was in view of these positions taken and earnestly urged in the argument here by the counsel for respondent that we deemed it due to them to set out fully, and at much greater length than we thought really necessary, all that occurred in the court below in reference to this matter.

In the first place, we do not see by what authority it can properly be said that the provision in the act of 1879, requiring the prepayment of the costs of the former action, was intended only for the benefit of the defendant. We find this provision in the act as one of the conditions upon which the plaintiff may enjoy a privilege there accorded to him, and it certainly was not to the interest of the defendant to remove one of the obstacles in the way of having another action brought against it, either by waiver or otherwise. But, in the second place, we do not think that there was anything in the conduct of the defendant which amounted to a waiver of its right to insist upon the plaintiff complying with both of the statutory requirements. It was not the duty of the defendant, nor was it to its interest, to have the cost of the former action regularly taxed, or to make any claim or demand for the payment of the same, and thus facilitate and suggest plaintiff's compliance with a condition precedent to its right to bring the present action. On the contrary, it was the duty of the plaintiff, as well as to its interest, to ascertain and pay these costs which it had unnecessarily incurred, as shown by its voluntary discontinuance of the former action. When the defendant by its answer for-

mally set up as one of its defences the fact that the plaintiff had not first paid the costs of the former action before commencing the present action, we do not see what more could be required or expected of the defendant, and the fact that the defendant urged and insisted upon a speedy trial, as it had a perfect right to do, certainly cannot be regarded as a waiver of a right which it had distinctly set up in its answer as a bar to plaintiff's right to maintain this action.

Again, it is urged that the form of the order of discontinuance is significant, inasmuch as the order states that the plaintiff desires to let fall its action "for the purpose of bringing a new action," which, it is argued, reserves the plaintiff's right to bring a second action. In the first place, we do not think that the order can properly bear any such construction; and we have no idea that his honor, Judge Gary, in granting the order, either intended or supposed that he could reserve to the plaintiff any such right without complying with the statutory requirements. But even if he had so intended, and had declared such intention in express terms, it is quite certain that he had no power to dispense with an express statutory provision.

Finally, it is argued that until the costs of the previous action had been taxed according to law, the court could not assume that there were any such costs. In view of the fact that the court not only did assume that there were such costs due and unpaid, but also required the payment thereof before the trial could be allowed to proceed, to which action of the court the plaintiff not only did not except, but also acquiesced therein, and paid without protest the costs reported by the clerk to be due, to which report no exception was taken, we do not see how such a position can be sustained. It is too late now to take the position that there were no costs of the former action, as plaintiff is effectually estopped from taking such ground, even if otherwise any such view could be sustained, which we do not think is the case; for after the fact was made to appear to the court by the production of the record, that a former action had been commenced, and had been discontinued on the motion of the plaintiff, it followed *as a matter*

*of law* that costs had been incurred, which the plaintiff was liable to pay, and which the statute expressly declares must be first paid before a second action could be maintained.

Inasmuch as the views which we have presented are conclusive, not only of this appeal but also of the case, the other questions presented need not be considered. While it may seem somewhat harsh to enforce this stringent statutory requirement, we are the less reluctant to do so in this case, where the object of the action is to recover the possession of lands which have been in the continuous, undisputed, and unchallenged possession of the defendant, and those under whom it claims, ever since the 8th of April, 1853, a period of more than forty years before the commencement of this action; especially when we see that the Circuit Judge took from the jury the question of fact as to the character of such possession.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.

In this case a petition was filed asking for a rehearing, but the petition was refused by an order of December 15, 1894,

PER CURIAM. After a careful consideration of this petition, the court is unable to discover that any material fact or principle of law has either been overlooked or disregarded, and there is, therefore, no ground for a rehearing. It is, therefore, ordered, that this petition be dismissed, and that the stay of the *remittitur* heretofore granted be revoked.